**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| **CHRISTOPHER M. HAYDEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **CAUSE NO. 1:25-cv-00176-ALT** |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** *sued as Frank Bisignano,*[1] | ) |
| *Commissioner of Social Security* | ) |
| *Administration,* | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Christopher M. Hayden appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying his application under the Social

Security Act (the "Act") for Supplemental Security Income (SSI). (ECF 1). For the following

reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Hayden applied for SSI in September 2022, alleging disability beginning January 1,

2020. (ECF 12 Administrative Record ("AR") 14, 184-92).[2] Hayden's claim was denied initially

and upon reconsideration. (AR 14, 74, 79). On December 21, 2023, administrative law judge

("ALJ") Meredith Jacques conducted an administrative hearing, at which Hayden, who was

represented by non-attorney representative and retired physician George Merkle, and a

---

[1] Frank Bisignano became the Commissioner of Social Security in May 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor as the defendant in this suit. *See La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *n.2 (S.D. Ind. May 15, 2025).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

vocational expert ("VE") testified. (AR 43-73). On February 23, 2024, the ALJ rendered an unfavorable decision to Hayden, concluding that he was not disabled because he could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by his impairments. (AR 14-26). The ALJ also noted that even if Hayden were additionally limited to sedentary work, the VE testified that 80,000 to 100,000 jobs would remain available. (AR 26). The Appeals Council denied Hayden's request for review (AR 5-9), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On April 14, 2025, Hayden filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Hayden argues that the ALJ erred by: (1) failing to account for his off-task behavior and expected absenteeism, (2) relying on VE testimony that was not supported by reliable methodology, (3) mischaracterizing the record as to certain evidence, (4) failing to incorporate reaching limitations into the residual functional capacity (RFC), (5) failing to properly analyze his back pain and the effects of his back impairment, and (6) overemphasizing his performance of daily activities. (ECF 22 at 8-22).

On the date of the Commissioner's final decision, Hayden was forty years old (AR 184), was a high school graduate and had attended some college (AR 49, 220, 230, 234), and had past relevant work as a flash trimmer, cook, and cashier (AR 24, 69-70; *see also* AR 234). In his SSI application, Hayden alleged that he is disabled due to the following conditions: recurring pulmonary emboli, lumbar degenerative disc disease, lumbar radiculopathy, insulin-dependent diabetes, hyperlipidemia, major depressive disorder, exogenous obesity, methadone dependency, hepatitis C, and hypertension. (AR 233).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### A. The Law

Under the Act, a claimant seeking SSI must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. § 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. § 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

At step one of the five-step sequential analysis, the ALJ found that Hayden had not

engaged in substantial gainful activity since his application date of September 13, 2022. (AR 16).

At step two, the ALJ found that Hayden had the following severe impairments: substance use

disorder, type 2 diabetes, recurrent pulmonary embolism, morbid obesity, hepatitis C, status post

lumbar fusion, obstructive sleep apnea, gastroparesis, and depressive disorder. (AR 16). At step

three, the ALJ concluded that Hayden did not have an impairment or combination of

impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix

1. (AR 17).

> The ALJ assigned Hayden the following RFC:
>
> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR
> 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds;
> occasionally climb ramps and stairs; frequently balance … ; frequently stoop,
> kneel, crouch, and crawl; frequently reach in all directions with the bilateral upper
> extremities; avoid concentrated exposure to Dust, Odors, Fumes, and Pulmonary
> Irritants … ; avoid concentrated exposure to hazards, such as unprotected heights
> and unguarded moving mechanical parts; can understand, remember, and carry
> out detailed but not complex instructions and tasks; can have frequent interactions
> with coworkers, supervisors, and the public.

(AR 19). The ALJ determined at step four that given the assigned RFC, Hayden could not

perform any of his past relevant work. (AR 24). At step five, the ALJ found a hypothetical

individual of Hayden's age, education, experience, and assigned RFC could perform a significant

number of unskilled, light-exertional jobs in the national economy, including collator operator,

routing clerk, and price marker. (AR 25).[3] Accordingly, Hayden's application for SSI was denied.

(*Id.*).

### C. Off-Task Behavior and Absenteeism

In his first argument, Hayden cites to the VE's testimony that there would be no jobs for a

person who is off task more than ten percent of the workday or who accumulates more than

---

[3] The ALJ further noted that even if Hayden were additionally limited to sedentary work, the VE testified that 80,000 to 100,000 jobs would remain available. (AR 26).

twelve absences a year. (ECF 22 at 8 (citing AR 72)). But Hayden does not argue, much less cite evidence in support, that the ALJ erred in some respect when considering any evidence pertaining to off-task behavior or absenteeism. Instead, Hayden unrelatedly launches into an argument challenging the ALJ's alternative finding that Hayden could perform 80,000 to 100,000 sedentary jobs. (*Id.* at 8-9). This argument, however, is better suited for discussion with Hayden's second argument challenging the reliability of the VE's methodology.

"[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived …." *Cresp v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) (citation omitted). Given Hayden's failure to develop or support an argument pertaining to his off-task behavior or absenteeism, his first argument relating to off-task behavior and expected absenteeism is deemed waived.

### D. Reliability of the VE's Methodology

At the administrative hearing, the VE testified that a hypothetical individual of Hayden's age, education, experience, and RFC could perform light exertional jobs that number "into the millions[,]" citing representative jobs of collator operator (33,000 jobs nationally), routing clerk (25,000 jobs nationally), and price marker (137,000 jobs nationally). (AR 70-71). The VE further testified that if the same hypothetical individual were additionally limited to sedentary work, "80,000 to 100,000 jobs" would remain available to him, including representative jobs of document preparer (16,000 jobs nationally), polisher (1,200 jobs nationally), and sorter (1,800 jobs nationally). (AR 71). The ALJ relied on the VE's testimony when making her step-five finding that Hayden could perform a significant number of light-exertional jobs in the economy despite the limitations caused by his impairments. (AR 25-26).

In his second argument, Hayden asserts that the ALJ erred at step five by "tak[ing] the

VE's testimony about job numbers at face value without offering or getting support as to the methodology." (ECF 22 at 10 (citing AR 24, 26, 70-71)). Hayden, however, did not raise this argument at the administrative hearing. (*See* AR 72 ("ALJ: Mr. Merkle, do you have any questions for our vocational expert? REP: I do not have any questions. Thank you, Your Honor.")). "A claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections." *Schmitz v. Colvin*, 124 F.4th 1029, 1033 (7th Cir. 2024) (citation and brackets omitted)). A claimant must object "or otherwise indicate that the testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection." *Leisgang v. Kijakazi*, 72 F.4th 216, 219-20 (7th Cir. 2023) (citation omitted). Hayden did not raise this argument in a post-hearing brief. (*See* AR 177-79).

"When no one questions the VE's foundation or reasoning, an ALJ is entitled to accept the VE's conclusion …." *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) (citation and brackets omitted) (ellipses in original). Nor are there any obvious flaws in the VE's testimony. *See Schmitz*, 124 F.4th at 1033 ("[A]ssuming there are no obvious flaws in the testimony, where a claimant has failed to put the vocational expert's foundation or methodology into issue and the expert's testimony is otherwise uncontradicted, the ALJ is entitled to credit that testimony." (collecting cases)). "[A] claimant may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record." *Leisgang*, 72 F.4th at 220 (citation omitted). Therefore, Hayden has waived any challenge to the reliability of the VE's methodology by failing to raise it at the administrative hearing.

Nor does Hayden's challenge to the number of sedentary jobs cited by the ALJ, raised in his first argument, necessitate a remand. (*See* ECF 22 at 8-9). Hayden asserts that while the VE testified 80,000 to 100,000 sedentary jobs would be available if Hayden were further limited to

sedentary work, the VE identified just three representative jobs, totaling 19,000 jobs. (*Id.* (citing AR 71)). Hayden contends this alternative finding falls "in a questionable zone" as to whether 19,000 jobs is a significant number of jobs for purposes of a step-five finding. (*Id.*); *compare Nilda G. O'Malley*, No. 22 C 1542, 2024 WL 4647855, at *4 (N.D. Ill. Oct. 31, 2024) (finding 17,000 jobs nationally was a significant number) (collecting cases), *with John C. v. Saul*, No. 19 C 411, 2021 WL 794780, at *6 (C.D. Ill. Mar. 2, 2021) (20,000 jobs nationally not significant), and *Gass v. Kijakazi*, No. 1:19-CV-404-TLS, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021) (24,000 jobs nationally not significant). But the Court need not reach this issue, given that it was the ALJ's alternative finding. Hayden does not dispute that the ALJ cited a significant number of light-exertional jobs—195,000 nationally—that Hayden could perform.

### E. Mischaracterization of the Evidence

Hayden next argues, in a rather scattershot manner, that the ALJ mischaracterized certain evidence of record, necessitating a remand. (ECF 22 at 10-17). The Court will address this evidence in turn.

1. Nausea and Vomiting

Hayden first asserts that the ALJ mischaracterized the record as to the length of time he suffered from gastroparesis symptoms, thereby failing to build a logical bridge from the gastroparesis evidence to the RFC. (ECF 22 at 10). Hayden contends that he suffered from nausea and vomiting for more than twelve months. (*Id.* at 11).

But the ALJ found Hayden's gastroparesis to be a severe impairment at step two. (AR 16). The ALJ summarized Hayden's testimony at the hearing, stating Hayden testified "that he was vomiting for 9 months straight" but that his symptoms were "under control since he stopped taking Ozempic" in August 2023, which resolved his symptoms. (AR 20-21; *see* AR 59-60). The

ALJ then considered the medical evidence pertaining to Hayden's nausea and vomiting

symptoms:

> A review of the medical evidence of record shows the claimant's main issue appears to be nausea and vomiting, the cause of which has not been confirmed (Exhibits 3F/22; 5F/35; 11F/1). Treatment notes indicate the symptoms began sometime in July 2022 and continued for several months in 2023 (Exhibits 3F; 9F;11). However, the claimant testified that the vomiting completely resolved once he stopped taking Ozempic, which was around August 2023 (Hearing Testimony; Exhibit 11F/1). In addition, the claimant follows with a methadone clinic for a substance use disorder and notes indicate his nausea and vomiting began when started methadone. However, he reported that treatment for opioid-induced/idiopathic constipation had helped with the nausea and vomiting (Exhibit 11F/1, 6). The record does not reflect any ongoing treatment with gastroenterology and there are limited emergency room visits for nausea and vomiting. While the claimant has been diagnosed with hepatitis C, which the undersigned recognizes might contribute to the claimant's nausea, this condition has been noted to be without symptoms (Exhibit 6F/4).

(AR 21). When assigning the RFC, the ALJ accounted for Hayden's gastroparesis symptoms,

stating: "Due to the claimant's reports of nausea and vomiting, the [ALJ] has included limitations

in stooping, kneeling, crouching and crawling in addition to the limitation to light work and

hazard limitations." (AR 23).

Hayden asserts that just because he testified that he was vomiting for nine months straight

does not mean that his vomiting episodes did not affect him for at least twelve months. (ECF 22

at 11). He contends the ALJ artificially narrowed the time period of his gastroparesis symptoms

by stating they were "completely resolved" by August 2023. (AR 21; *see* ECF 22 at 11-12). He

argues that the improvement he experienced in his nausea and vomiting symptoms after stopping

Ozempic does not equate to his symptoms being "completely resolved" as the ALJ claimed,

noting there "can be a great distance between a patient who responds to treatment and one who is

able to enter the workforce." (ECF 22 at 12 (quoting *Black v. Comm'r*, No. 4:22-cv-49, 2023 WL

9

6365441, at *4 (N.D. Ind. Sept. 29, 2023)).

Hayden's testimony about nausea and vomiting arose when the ALJ inquired about his

treatment for hepatitis C:

> Q:      [U]p until this point have you had any treatment for [hepatitis C]?
>
> A:      No. They … weren't willing to treat me because I was puking for the last nine months straight.…
>
> Q:      So, is that puking under control now?
>
> A:      Yes, for right now.
>
> ….
>
> Q:      How did they get that under control for you? ….
>
> A:      They took me off of Ozempic. I was on Ozempic due to my sugar, and they figured that was causing some of the major problems of the vomiting, but I still have gastroparesis but … being taken off of Ozempic has really helped not making me sick as much anymore. So, ever since I got taken off Ozempic I have not had to carry around a bucket and vomit every 20 minutes.

(AR 59-60). Given this testimony, the ALJ's characterization of his gastroparesis

symptoms as "completely resolved" may indeed have been a bit overzealous.

Having said that, the record is clear that Hayden's nausea and vomiting markedly

improved after stopping Ozempic. The ALJ additionally noted that June and August 2023

provider records indicate that Hayden's nausea and vomiting began when he started on

methadone, and that "treatment for opioid-induced/idiopathic constipation had helped

with the nausea and vomiting." (AR 21 (citing AR 845, 849)). In fact, in August 2023

Hayden's provider wrote that Hayden's "[v]omiting is much better." (AR 845). Further,

the ALJ correctly observed that "[t]he record does not reflect any ongoing treatment with

gastroenterology and there are limited emergency rooms visits for nausea and

vomiting[.]" (AR 21). As such, the ALJ's statement that Hayden's nausea and vomiting

was "under control since he stopped taking Ozempic" is not a mischaracterization of the evidence. (AR 20-21).

Next Hayden argues that his vomiting is first documented at a June 24, 2022, appointment, not in July 2022 as the ALJ represented. (ECF 22 at 13 (citing AR 420 (noting vomiting started two weeks earlier)). But this is a mere nitpick of the ALJ's decision. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 200) (The Court gives the ALJ's decision "a commonsensical reading rather than nitpicking at it." (citation omitted)). From there, Hayden leaps to asserting that the ALJ should have analyzed listing 5.08, weight loss due to any digestive disorder, and had a medical expert testify "for meet or equal analysis at [the] hearing" due to his nausea, vomiting, and weight loss. (ECF 22 at 13). However, in raising this cursory argument, Hayden readily admits "his BMI would not have met [this listing]" (ECF 22 at 13), dooming his own assertion. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (stating that the claimant bears "the burden of establishing that he met *all* of the requirements of a listed impairment" (emphasis added) (citations omitted)). Furthermore, "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) (citation omitted).

2.  Hepatitis C

Hayden also takes issue with the ALJ's observation that while he "has been diagnosed with hepatitis C, which … might contribute to [his] nausea, this condition has been noted to be without symptoms." (ECF 22 at 12-13 (quoting AR 21)). Hayden faults the ALJ for omitting that hepatitis C was showing up in his platelet levels and gastroenterology was holding off on treating his hepatitis C until the nausea and vomiting

symptoms were controlled. (*Id.* at 13; *see* AR 59, 846 ("We are working on controlling nausea and vomiting so he can be treated.")). But the ALJ's observation that Hayden's hepatitis C was without symptoms is grounded in the record, as the ALJ cited a July 2022 note from Fort Wayne Medical Oncology and Hematology indicating that Hayden was "not symptomatic" from his platelets level. (AR 21 (citing AR 608)); *see Davis v. Berryhill*, 723 F. App'x 351, 356 (7th Cir. 2018) (affirming the RFC where the ALJ "appropriately ground her conclusions in medical evidence from the record").

### 3. Hypertension and Orthostatic Problems

Hayden next takes aim at the ALJ's consideration of his hypertension and orthostatic problems as "non-severe" at step two, asserting that she failed to consider them in combination with his other impairments. (ECF 22 at 14). He points to his testimony that his diabetic neuropathy medication "causes [him] to feel … groggy all the time" (AR 58-59; *see* AR 20-21, 23), a March 2023 note that he gets dizzy when he stands up (AR 861), and that he was prescribed a continuous glucose monitoring system to detect low blood sugar in March 2023 (AR 862). (*See* ECF 22 at 14).

However, the ALJ noted that Hayden "denied side effects from blood pressure medications" and that the evidence of record "does not suggest that [the orthostatic] symptoms have lasted for 12 months or longer" (AR 17 (citing AR 415, 862)). And due to Hayden's "reports of grogginess from his medications," the ALJ precluded him in the RFC from "concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts." (AR 23). Therefore, the ALJ did not ignore these medical conditions. Hayden fails to identify what other limitations relating to his medication side effects, hypertension, and orthostatic issues should have been included in the RFC that

were not, much less produce a medical source opinion assigning him such limitations.

"[I]t is a claimant's responsibility to produce evidence [of disability]." *S.J. v. Comm'r of Soc. Sec.*, No. 1:23-cv-01130-JEH, 2024 WL 6848001, at *5 (C.D. Ill. Mar. 13, 2024) (citations omitted)); *see Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024) ("It is not enough to criticize the ALJ's decision …. [The plaintiff] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record."). Here, Hayden has failed to produce evidence that his grogginess and non-severe impairments of hypertension and orthostatic problems were insufficiently accounted for in the RFC.

### F. Reaching Limitations

At the hearing, Hayden testified that since his lumbar fusion surgery, standing activities like laundry, showering, and washing dishes exacerbate his back pain, and he has to use a "reacher" to retrieve items from overhead cabinets. (AR 20; *see* AR 57). The ALJ acknowledged this testimony and "[d]ue to the claimant's lumbar spine issues and morbid obesity with reports of back pain and difficulty reaching, [she] included limitations in climbing, reaching and balancing." (AR 22-23). The relevant limitation in the RFC restricted Hayden to "frequently reach in all directions with the bilateral upper extremities[.]" (AR 19). Hayden now argues that the ALJ failed to build a logical bridge between his testimony of reaching limitations and this limitation for frequent reaching in the RFC. (ECF 22 at 17-18 ("At no point does the ALJ explain how someone requiring use of a 'reacher' to get things out of overhead cabinets can be expected to … reach overhead frequently (i.e. 2/3rds of the workday …)[.]")).

But as the Commissioner emphasizes, Hayden does not identify anything beyond his own subjective complaints to support his claim he is unable to perform work requiring frequent

reaching. (ECF 28 at 11). The ALJ discerned that Hayden's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record. (AR 21). "[A]n ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citation omitted).

Here, the ALJ relied on the opinion of Emily Krach, D.O., who concluded in a consultative examination that Hayden could lift and carry less than ten pounds frequently and over ten pounds occasionally. (AR 23 (citing AR 782)). Hayden has not produced a medical opinion that contradicts Dr. Krach's finding. *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [the claimant] offered no opinion from any doctor to set sitting limits … greater than those the ALJ set." (citation omitted)). "[A]s [the Seventh Circuit Court of Appeals] has underscored time and again, a claimant bears the burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (citations omitted); *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove the claim of disability." (citations omitted)). Therefore, Hayden's argument that the ALJ erred with respect to the reaching limitations included in the RFC is unavailing.

### G. Back Pain

Hayden next argues that the ALJ failed to sufficiently account for his back pain in the RFC. (ECF 22 at 18-19). In doing so, Hayden accuses the ALJ of "merely summarizing the medical record" but neglecting to build "a logical bridge between that evidence and her conclusion[.]" (*Id.* at 19). Specifically, Hayden claims the ALJ relied too heavily on his improvement in the record and his pulling up carpet on one occasion, failed to account for how

his mental limitations would contribute to his chronic pain, and failed to acknowledge the pain-relieving aspects of his Methadone use. (*Id.* at 18-19).

The ALJ duly considered Hayden's testimony that he could not work due to daily pain since lumbar fusion surgery, or take prescription medications for pain relief due to his participation in a methadone clinic. (AR 20; *see* AR 57, 61). The ALJ also noted that Hayden claimed doing laundry, showering, or doing dishes exacerbate his pain; that he uses a "reacher" to retrieve items from overhead cabinets; spends six to eight hours lying down or reclined with his legs elevated even on his best days; and uses a walker about two times a week. (AR 20; *see* AR 57, 61, 67). Hayden estimated that he could stand for 35-40 minutes, but later said 15 minutes; walk less than a city block, and had to change position from sitting twice during the 42-minute hearing. (AR 21; *see* AR 57, 67-68).

After summarizing Hayden's testimony, the ALJ contrasted it with the medical evidence of record pertaining to back pain, stating:

> In terms of the claimant's back pain, the evidence does not support the degree of pain alleged or the need for an assistive device. Records confirm a history of lumbar fusion surgery in July 2020 (Exhibit 1F/32). However, imaging post-surgery has shown a stable appearance of the fusion and a post-surgery exam revealed intact strength in the claimant's upper and lower extremities and substantially improved, back, neck and radicular pain (Exhibit 1F/6, 12, 21, 34). Moreover, records reflect little treatment for back pain since the surgery, aside from physical therapy in 2021. More recent medical exams indicate the claimant was generally well-appearing and able to ambulate without any assistance (Exhibits 9F; 11F/2, 5, 10, 14, 17). Physical therapy notes indicate improvement in the claimant's symptoms, but the claimant did report pain after he "over did it" trying to pull up carpet (Exhibit 2F/3).
> ….
>
> At a consultative medical examination in June 2023, the claimant … had abnormal straight leg raises in the seated and supine positions, some limited range of motion in the lumbar spine and the inability to squat below 50 degrees. However, the remainder of the claimant's physical exam was normal and he did not use any assistive devices or identify any issues with fine finger skills at the

exam (Exhibit 9F).

(AR 22).

When determining the RFC, the ALJ explained that "[d]ue to the claimant's lumbar spine issues and morbid obesity with reports of back pain and difficulty reaching, the [ALJ] has included limitations in climbing, reaching and balancing." (AR 23). The ALJ then limited Hayden in the RFC, in relevant part, to: "never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently balance …; frequently stoop, kneel, crouch, and crawl; frequently reach in all directions with the bilateral upper extremities …." (AR 19-20).

Hayden first generally argues that the ALJ failed to explain how a limitation to light-exertional work with frequent balancing and no climbing ladders in the RFC is sufficient to account for his back pain. (ECF 22 at 19). But when crafting the RFC, the ALJ found "persuasive" the opinion of the consulting examiner, Dr. Krach, who opined that Hayden could stand or walk for *at least* two hours in an eight-hour day and lift or carry less than ten pounds frequently and more than ten pounds occasionally. (AR 23, 782). Of course, while an ALJ may decide to adopt an opinion in a medical source statement, "the RFC assessment is an issue reserved to the ALJ." *Guerra v. Comm'r of Soc. Sec.*, No. 1:15-cv-00224-SLC, 2016 WL 6818878, at *7 (N.D. Ind. Nov. 18, 2016) (citing 20 C.F.R. §§ 404.1545(e), 416.945(e), SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996)).

"RFC does not represent the *least* an individual can do despite his … limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (footnote omitted). The ALJ appreciated this distinction when observing that Dr. Krach estimated the "least" Hayden could stand or walk, rather than the most. (AR 23). Noting that Dr. Krach's examination findings were "relatively benign" (*id.*), Hayden's back pain had "substantially improved" after his 2021

16

surgery (AR 22), and the "records reflect little treatment for back pain since the surgery" (*id.*), the ALJ opted to assign Hayden an RFC for a limited range of light-exertional work. *See* SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983) (informing that light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[,]" while sedentary work generally requires no more than two hours of standing or walking in an eight-hour workday). Hayden fails to produce a medical source opinion assigning him greater limitations due to his back pain than those assigned by the ALJ. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citation omitted)).

Nevertheless, Hayden argues that the ALJ leaned too heavily on the improvement in his back pain after the 2021 surgery when discounting the severity of his symptoms. (ECF 22 at 20 (citing AR 22-24); *see* AR 321). He emphasizes that there "can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." (*Id.* (quoting *Black v. Comm'r of Soc. Sec.*, No. 4:22-cv-49, 2023 WL 6365441, at *4 (N.D. Ind. Sept. 29, 2023)). While that may be true, Hayden fails to carry his burden of producing medical evidence showing that the severity of his back pain precludes him from entering the workforce. As already explained, Dr. Krach's examination findings were "relatively benign" (AR 23), and the "records reflect little treatment for back pain since the [2021] surgery" (AR 22). *See Doulen v. Astrue*, No. 1:08-cv-1217-LJM-TAB, 2009 WL 4798239, at *5 (S.D. Ind. Dec. 9, 2009) ("The claimant bears the burden of supplying adequate records and evidence regarding an impairment, its severity and the relevant time frame." (citation and internal quotation marks omitted)).

Hayden also attempts to fault the ALJ for citing his July 2021 physical therapy discharge

summary documenting his improvement and that he "over did it" trying to pull up carpet. (ECF 22 at 20; *see* AR 22, 360). Hayden argues that "the ALJ does not explain why this error in judgment [to pull up carpet] leading to acute treatment … discredits his chronic pain." (ECF 22 at 20). But the ALJ's notation of this activity is grounded in the record, and Hayden fails to show how the ALJ's consideration of his activities when assessing his symptom testimony was "'patently wrong,' as was [Hayden's] burden." *Kristin S.B. v. Kijakazi*, No. 23 C 281, 2023 WL 6929583, at *6 (N.D. Ill. Oct. 19, 2023) (citation omitted).

Next Hayden argues that the ALJ failed to account for how his "mental limitations would overlap and reinforce the chronic pain effects[,]" citing his claimed problems focusing and that he has to read things multiple times. (ECF 22 at 20-21; *see* AR 18). Hayden points to the ALJ's "paragraph B" finding that he had moderate limitations in maintaining concentration, persistence, or pace. (AR 18). But the ALJ explained that Hayden's "ability to attend school and the limited treatment for his mental health symptoms with several providers noting normal mental status exams [were] considered in limiting the claimant to detailed but not complex tasks." (AR 23). The ALJ then  limited Hayden to "detailed but not complex instructions and tasks" in the RFC due to his "no more than moderate difficulties in understanding, remembering, or applying information and concentrating, persisting or maintaining pace." (*Id.*; *see* AR 19). Again, Hayden fails carry his burden to produce a medical source opinion assigning him greater limitations due to his back pain and moderate limitations in concentration, persistence, or pace. *See Doulen*, 2009 WL 4798239, at *5.

Additionally, Hayden contends the ALJ should not have discredited the severity of his back pain based on his lack of pain management treatment while participating in a methadone clinic for his addictions. (ECF 22 at 21; *see* AR 61 ("I can't go to a pain management right now

18

because I go to a methadone clinic.")). Hayden emphasizes that "Methadone is itself a heavy painkiller[,]" and one reason he has not sought more back pain treatment is because medical providers view him as drug-seeking. (ECF 22 at 21). But the ALJ *did* consider that Hayden could not take prescription pain medications when participating in a methadone clinic. (*See* AR 20, 61). Furthermore, treatment can include more than just taking pain medications. As the ALJ accurately noted, the "records reflect little *treatment* for back pain since the surgery, aside from physical therapy in 2021." (AR 22 (emphasis added); *see* AR 360 (physical therapy discharge summary from July 2021 documenting that Hayden had attended eight treatments and missed six)). Thus, the ALJ did not unfairly discredit the severity of Hayden's back pain when considering that he had sought little treatment for back pain since his 2021 surgery.

### H. Daily Activities

In his last argument, Hayden asserts that the ALJ overemphasized his performance of activities of daily living in determining that he was not disabled. (ECF 22 at 22). Specifically, Hayden criticizes the ALJ's consideration of his ability to read psychology materials, use public transportation, and live with friends without acknowledging the context surrounding these daily activities. (*Id.*). Hayden emphasizes that he uses Wells County on Wheels, which is a service provided by Wells County Council on Aging that takes people "curb to curb[,]" and that the friends he lives with help support him "without him having to do anything to help them back …." (*Id.*).

Contrary to Hayden's assertion, the ALJ fairly considered his performance of these daily activities when analyzing the "paragraph B" criteria at step three and concluding that Hayden had a moderate limitation in understanding, remember, or applying information; interacting with

others; and maintaining concentration, persistence, or pace. (AR 18). The ALJ reasoned:

> In understanding, remembering or applying information, the claimant has a moderate limitation. He alleges memory problems and reports some difficulty following spoken instructions. However, he reported following written instructions "very well" (Exhibit 4E). Moreover, evidence shows he is *able to read psychology materials, use public transportation*, play a Star Trek game on his phone, count change, and manage money (Hearing Testimony; Exhibit 4E). He also reported attending a virtual school to become an addi[c]tion counselor (Hearing Testimony).
>
> In interacting with others, the claimant has a moderate limitation. He notes he does not want to leave the house and sleeps all day. However, evidence shows he is *able to live with friends, take public transportation*, get rides from his sister and talk to others daily. He reported going to the clinic, letting his dogs out on a daily basis, and going grocery shopping once a week for about an hour. He denied any problems getting along with family, friends, neighbors or authority figures and denied any history of job termination due to problems getting along with other people (Exhibit 4E).
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant alleges problems focusing and reports that he has to read things over again. He also mentioned inattentiveness at a medical exam in May 2023. However, he denied ever being diagnosed with ADHD (Exhibit 11F/10), and medical records do not reflect a diagnosis of an attention disorder or the inability to focus at exams (Exhibits 1F-6F; 9F-11F). Moreover, the claimant reported that he reads and watches TV "all day" (Exhibit 4E). At the hearing, he said he *reads psychology*. He also reported playing Star Trek on his phone and noted that his ability to handle money had not changed since his illnesses/conditions began (Hearing Testimony; Exhibit 4E).

(AR 18 (emphasis added)).

"Because the ALJ is required to determine whether Plaintiff has marked restrictions in activities of daily living (in order to determine whether Plaintiff satisfies the criteria of paragraph B), the ALJ is plainly entitled to consider any evidence related to Plaintiff's activities of daily living …." *Simmons v. Berryhill*, No. 5:17-CV-25 (STAMP), 2017 WL 8777460, at *5 (N.D.W.V. Dec. 22, 2017). There is no indication that the ALJ did so unfairly here, and thus, the ALJ's consideration of Hayden's daily activities is not grounds for reversal. *See Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) ("We will overturn the ALJ's evaluation of a claimant's subjective

symptoms only if it is 'patently wrong, which means that the decision lacks any explanation or support." (citation and internal quotation marks omitted)).

In sum, none of Hayden's multiple arguments challenging the ALJ's decision merits a remand. The ALJ's decision is supported by substantial evidence and will be affirmed.

### IV. CONCLUSION

The Commissioner's final decision denying disability is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Hayden.

SO ORDERED.

Entered this 1st day of May 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge